**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**June 25, 2020**

# In the Court of Appeals of Georgia

A20A0675. ARNOLD v. WORD et al.                    DO-022

DOYLE, Presiding Judge.

Michael Smith, who was autistic, died after choking on food while a resident at a personal care home called The Providers, Inc., a/k/a Word's Personal Care Home ("The Providers"). As administrator of Smith's estate, Catherine Arnold (Smith's aunt) sued Dorothy and Jerry Word; Word's Personal Care, Inc.; The Providers, Inc.; certain staff of The Providers; and Gracewood I, LLC,[1] asserting nine causes of action arising out of the care of Smith.[2] The trial court granted summary judgment to Jerry

---

[1] Gracewood is an admitted owner of the property on which the facility was operated and was added as a party in Arnold's fifth amended complaint filed on December 6, 2018.

[2] Approximately five months after filing suit against The Providers, Arnold brought a second action against the hospitals and doctors who gave medical clearance

Word on all claims.[3] Arnold appeals the grant of summary judgment to Jerry, contending that the trial court erred by ruling that, for the purposes of this case, Jerry had no duty to Smith. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[4]

So viewed, the record shows that Smith was diagnosed with severe autism, and although he was in his mid-thirties, he did not speak and had the mental age of a

_____

to place Smith with The Providers. In Case No. A20A1233, Arnold appeals from the grant of summary judgment to those defendants. Although that case involves some of the same factual context, it arises from different rulings addressing different defendants in different trial court orders. Some of the depositions from Case No. A20A1233 were filed in this case , and our review is confined to the record before the trial court when it ruled in the present case. See generally *Graham v. Ault*, 266 Ga. 367 (2) (466 SE2d 213) (1996) (appellate court cannot consider facts which do not appear in the record sent from the trial court).

[3] The trial court also granted partial summary judgment to Dorothy. That ruling is not part of this appeal.

[4] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

three-year-old child. He lived with his mother (Arnold's sister), but after the mother exhibited troubling behavior, Arnold contacted adult protective services and, on their advice, contacted police who assisted Arnold in getting Smith and his mother to Grady Hospital for medical and psychological evaluations. Grady Hospital contacted Dorothy, the founder and CEO of The Providers, to inquire about placing Smith at The Providers, and after Arnold visited the facility, Smith was placed there as a resident. The day before Smith arrived at The Providers, Arnold told Dorothy that Smith needed his food cut up "because he only swallowed."

Within the first week, Dorothy realized that The Providers was not an appropriate placement for Smith because he lacked the ability to perform basic functions such as go to the bathroom by himself. Dorothy informed Arnold and began the process of engaging social services to relocate Smith, but the process played out for months. During this time, Dorothy believed that Smith had been mistreated prior to coming to her, and she and her staff continued to work with Smith to help him progress. When Smith arrived at The Providers, he would not eat unless the door was closed and the lights were off; after two months, he was eating with other residents. One morning, after finishing his own breakfast, Smith returned to the dining area and "snatch[ed]" a sausage off of another resident's plate and "stuff[ed]" it in his mouth.

3

In the process of eating it, Smith choked; Dorothy quickly realized he was choking and attempted to perform an abdominal thrust to rescue Smith, but she was unsuccessful. Smith asphyxiated on the food and died.

Acting on behalf of Smith's estate, Arnold sued Jerry Word, along with the other defendants, based on the care Smith received at The Providers. The complaint alleged claims for simple negligence and negligent supervision of Smith, violation of OCGA § 31-8-100 et seq. ("Bill of Rights for Residents of Long-term Care Facilities," hereinafter "Residents' Bill of Rights"), breach of fiduciary duties, premises liability, negligent hiring and retention, respondeat superior, professional negligence, breach of contract, and punitive damages. Following discovery, Jerry and Dorothy moved for summary judgment, which was granted entirely as to Jerry (and in part as to Dorothy). Arnold now appeals from the order granting summary judgment to Jerry, contending that Jerry owed Smith a duty pursuant to a premises liability theory, the Residents' Bill of Rights, and as a fiduciary and caregiver to Smith. For the reasons that follow, we discern no reversible error and affirm the trial court's grant of summary judgment in favor of Jerry on all claims.

1. *Premises liability.* "Georgia premises liability law holds owner/occupiers of land liable for damages suffered by an invitee on their property where the invitee's

4

injuries were caused by the owner/occupier's failure to exercise ordinary care *in keeping the premises and approaches safe*."[5] In support of her premises liability claim, Arnold points to deposition testimony from Dorothy stating that Jerry was a co-owner of the property as well as the named insured on an insurance policy.[6] But even assuming Jerry's co-ownership of the property, Arnold's claim against him does not sound in premises liability.

> Georgia law distinguishes between negligence cases where a condition on the premises causes injury to someone and those where an employee's active negligence causes injury to someone. Liability is determined under the framework of premises liability *only if an injury is caused by a condition of the premises over which the premises owner/occupier has some degree of control, such as a static condition or passive defect*. If an injury is caused by the active negligence of an

---

[5] (Punctuation omitted, emphasis supplied.) *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 53-54 (805 SE2d 60) (2017), quoting *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (a) (i) (493 SE2d 403) (1997).

[6] Dorothy also testified in the same deposition that she was the sole owner of the property. Further, in an answer to the fifth amended complaint, Gracewood, Dorothy, and Jerry admit that Gracewood is the owner of the property and deny that Dorothy or Jerry own the property. Nevertheless, to the extent that a factual issue remains on this question, we construe the record in favor of Arnold as the nonmovant on summary judgment. See *Matjoulis*, 226 Ga. App. at 459 (1). See also *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 27-30 (343 SE2d 680) (1986).

owner/occupier's employee, however, ordinary negligence principles apply.[7]

Here, the hazard at issue, a breakfast sausage on a plate at a meal, is not the type of hazard that gave rise to a duty of care on Jerry's part under a premises liability theory.[8] Arnold's premises liability claim alleges that the defendants "negligently gave or negligently allowed Smith access to food that was not specially cut-up/crushed and, to a such degree as the jury shall decide, their sausage killed Smith." Thus, "the factual bases that she identifies for her claims do not sound in premises liability."[9] Arnold's purported premises liability claim is essentially a *negligent care* claim, and Arnold "does not contend[, nor does] the record . . . reflect that the

---

[7] (Citations omitted; emphasis supplied.) *Byrom v. Douglas Hospital, Inc.*, 338 Ga. App. 768, 771-772 (2) (792 SE2d 404) (2016). See also *Brownlee v. Winn-Dixie Atlanta*, 240 Ga. App. 368, 369-370 (523 SE2d 596) (1999).

[8] The sausage had not, for example, fallen on the floor, creating a slip-and-fall hazard, nor was Smith injured from a defect on the property. See, e.g., *First Communities Management, Inc. v. Holmes*, 353 Ga. App. 409, 410 (2) (837 SE2d 717) (2020) ("[T]he threshold point of our inquiry in a slip-and-fall case is the existence of a hazardous condition on the premises. And it is well established that proof of [an injury], without more, does not create liability on the part of a proprietor or landowner."); *Jones Lang LaSalle Operations, LLC v. Johnson*, 350 Ga. App. 439, 440 (829 SE2d 629) (2019) (hazardous stairs);

[9] *Byrom v. Douglas Hospital, Inc.*, 338 Ga. App. 768, 772 (2) (792 SE2d 404) (2016).

*premises* were unsafe."[10] Accordingly, under the facts of this case, Arnold has not identified a premises liability duty that Jerry owed to Smith arising from Jerry's alleged co-ownership of the property.[11]

2. *Residents' Bill of Rights Claim*. Arnold also challenges the grant of summary judgment to Jerry with respect to her claim for a breach of duty under the Residents' Bill of Rights. But the record contains no evidence that Jerry was an owner, officer, administrator, or employee of The Providers.[12] As summarized in Dorothy's deposition, she is the CEO, and Jerry has no role in the business as an officer or

---

[10] (Emphasis in original.) *Murphy v. Blue Bird Body Co.*, 207 Ga. App. 853, 857 (3) (429 SE2d 530) (1993) (concluding that an invitee plaintiff had not identified a premises liability claim implicated by the plaintiff's injury from an alleged misuse of the defendant's forklift). Cf. *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994) (decided before *Robinson v. Kroger*, 268 Ga. 735 (493 SE2d 403) (1997), but with instructive analysis distinguishing a plaintiff's claims from a premises liability claim pursuant to OCGA § 51-3-1 because the claims did "not concern a condition of the premises over which [the proprietor] could have exercised some degree of control or of which [the proprietor] could have warned; instead, the claims pertain[ed] to an act of active negligence on the part of a [proprietor's] employee.").

[11] See *Byrom*, 338 Ga. App. 768, 772 (2) ("[T]he duty concerning a condition of the premises is distinct from a breach of duty that constitutes active negligence.").

[12] The act provides that a resident or his representative may bring an action against "a personal care home or its governing body, administrator, or employee for any violation of the rights of a resident granted under this article." OCGA § 31-8-136 (a).

7

employee of The Providers, and the business registration on record with the Secretary of State does not list Jerry as an officer. Consistent with this, there is no evidence that Jerry provided any care to Smith nor was Jerry involved in any decisions regarding Smith's care, and it is undisputed that Jerry was not present on the day Smith choked. There was unrebutted evidence that Jerry had a full-time job as a truck driver for a cement company; he merely provided occasional maintenance at the property when he was not working at his job. Therefore, Arnold has failed to identify a duty Jerry owed to Smith under the Residents' Bill of Rights.[13]

3. *Participation in Smith's care.* Arnold also argues that there is a factual question as to Jerry's participation in Smith's care based on the fact that Jerry was listed as a "proxy caregiver" on an informed consent form allowing the listed unlicensed caregivers to give daily care to Smith such as medication management, meal preparation, monitoring safety, and helping Smith bathe. But even though "[Arnold] is entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon

---

[13] See *Dutt v. Mannar & Co.*, __ Ga. App. __, __ (841 SE2d 132) (2020) ("In the absence of a legally cognizable duty, there can be no fault or negligence."), quoting *Sheaffer v. Marriott Intl.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019).

evidence which is too uncertain or speculative."[14] As explained above, the record shows that Jerry actually had no role in the operation of The Providers or the care of Smith, despite any authorization for him to provide care. Thus, it is simply too speculative, based on the record before us, to say that the mere existence of the proxy caregiver form gave rise to a duty on the part of Jerry in the daily care provided to Smith.[15]

4. *Intentional and other breach of fiduciary duties.* Last, Arnold also asserts that fact questions remain as to whether Jerry breached other duties to Smith, including "intentional" and fiduciary duties. But these claims are also based on Jerry's alleged status as a facility owner/operator or as a caregiver. As outlined above, there is no evidence that Jerry was an owner/operator of The Providers, nor is there evidence that Jerry was involved in the care of Smith. And Jerry's alleged co-

---

[14] (Punctuation omitted.) *Davis v. John Crane, Inc.*, 353 Ga. App. 243, 243 (836 SE2d 577) (2019).

[15] See, e.g., *Massey v. Seay*, 257 Ga. App. 131, 133 (570 SE2d 346) (2002) (affirming grant of summary judgment based on "highly speculative" nature of the record supporting the plaintiff's claim). Arnold also asserts as error the trial court's grant of summary judgment on his punitive damages claim against Jerry. But for the same reasons that her main claims against Jerry fail, the punitive damages claim also fails. See *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012) (claim for punitive damages is derivative of a plaintiff's substantive claims).

ownership of the property alone does not give rise to a fiduciary relationship between Jerry and Smith. Accordingly, the record contains no material issue of fact giving rise to a duty Jerry owed to Smith.[16]

In sum, the record before us reveals no material issue of fact showing that Jerry had a duty to Smith with respect to premises liability, his ownership of or participation in The Providers business, and any actual care given to Smith by Jerry. Accordingly, we affirm the grant of summary judgment to Jerry.[17]

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[16] In her enumerations of error, Arnold also makes passing reference to the trial court's erroneous grant of summary judgment to Jerry as to additional claims including negligence, negligent hiring and supervision, respondeat superior, and breach of contract. But other than this conclusory enumeration, she makes no substantive argument or citation to law or the record demonstrating error in those rulings. We also note that at least one complaint alleges claims for negligent retention and professional negligence, but those claims are not referenced or challenged in this appeal. Accordingly, Arnold has abandoned any challenge to claims other than those we address herein. See *Clack v. Hasnat*, 354 Ga. App. 502, 506 (2) (b) (841 SE2d 210) (2020); Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). Thus, summary judgment in favor of Jerry on all claims is affirmed.

[17] See *Dutt v. Mannar & Co.*, __ Ga. App. __, __ (841 SE2d 132) (2020) ("In the absence of a legally cognizable duty, there can be no fault or negligence."), quoting *Sheaffer v. Marriott Intl.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019).